IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 2, 2001

## STATE OF TENNESSEE v. JAMES BRENT MOUBRAY

**Direct Appeal from the Circuit Court for Weakley County**
**No. CR101-2000     William B. Acree, Judge**

--------

**No. W2001-00214-CCA-R3-CD - Filed February 14, 2002**

--------

The Defendant was convicted by a jury of possessing a firearm where alcoholic beverages are served, a Class A misdemeanor, and the trial court sentenced him to eleven months and twenty-nine days to be served at seventy-five percent. The Defendant now appeals, arguing that the sentence imposed by the trial court was excessive. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

C. Michael Robbins, Memphis, Tennessee (on appeal); and Colin Johnson, Dresden, Tennessee (at trial and on appeal), for the Appellant, James Brent Moubray.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and Allen Strawbridge, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I. Background

The Weakley County Grand Jury indicted the Defendant on charges of unlawful possession of a firearm in a place where alcoholic beverages are sold and of resisting arrest. The case was tried before a jury. The jury convicted the Defendant of possessing a firearm where alcoholic beverages are served, and the trial court sentenced him to eleven months and twenty-nine days incarceration.

### II. Facts

On the evening of July 27, 2000, Martin police officers Eric Larson and Dean Brooks were performing routine bar checks when they entered Dot's Bar around midnight. Once inside, Larson noticed the Defendant, James Brent Moubray, and asked Brooks if he also recognized him. Brooks

told Larson that he believed that the Defendant had outstanding arrest warrants. Larson then called the Martin Police Department and confirmed that the Defendant had an outstanding warrant for criminal trespass.

In the meantime, Lieutenant Andy Phelps heard the dispatch and went to Dot's Bar to assist officers Larson and Brooks in arresting or executing a warrant on the Defendant. Once Lt. Phelps arrived, all three officers approached the Defendant and informed him that he was being placed under arrest based on the outstanding warrant. According to Larson, the Defendant became "somewhat verbally abusive."

Larson testified that the Defendant finished his beer, stood up, raised his hands, and turned to the right. Larson had placed one handcuff on the Defendant when a female "darted between [the Defendant] and the wall," and the Defendant pulled forward trying to get to her. Larson testified that he and the Defendant "struggled a bit" as the Defendant was "trying to get towards this female." Larson testified that he was able to get the second handcuff on the Defendant, and then someone in the bar yelled, "[g]un." Although Larson testified that he did not see the gun, Lt. Phelps testified that he saw the female reach in the Defendant's waistband and pull out a pistol. Lt. Phelps testified that he immediately grabbed the female by the arm and took her outside.

The Defendant admitted that he was carrying a weapon in Dot's Bar when the officers arrested him; however, he testified that the reason he had the weapon was because he "had people shoot" at him in the past. The Defendant claimed that although the police officers carried him out of the bar, he "didn't resist arrest."

The jury found the Defendant guilty of unlawful possession of a firearm in a place where alcoholic beverages are sold but acquitted him on the resisting arrest charge. The trial court dismissed the jury and held a sentencing hearing immediately following the trial.

At the sentencing hearing, the Defendant sought to introduce into evidence the sentences that two other individuals received for unlawful possession of a firearm where alcoholic beverages are sold. According to the Defendant, the female who took the gun from his pants, as well as another individual, were charged on the same night with unlawful possession of a firearm where alcoholic beverages are sold, but the Defendant was the only one that was "bound over." The trial judge stated that he "couldn't care less what happened to the other defendants." However, the trial judge did allow evidence of the other sentences to be entered into the record.

The Defendant went on to discuss the sentences that he believed the two other individuals received and stated that all of them "had been shot at, and stuff." The trial court told the Defendant that the Defendant had a "pretty bad attitude" and that "whatever may have happened to [the Defendant] somewhere else on some other day, [the trial court] couldn't care less about." Defense counsel then began to ask the Defendant if there was anything else he would like to tell the court and asked the Defendant if he was remorseful. Before counsel completed the question, the trial court stated, "[n]o, of course he's not remorseful. I can tell that. You don't have to ask him. If he says

he is, he's lying about it." At the conclusion of the sentencing hearing, the trial court sentenced the Defendant to eleven months and twenty-nine days, to be served at seventy-five percent.

## III. Analysis

The Defendant argues that the sentence imposed by the trial court was excessive. Specifically, the Defendant argues that in sentencing him, the trial court departed from the "overall letter and spirit" of the 1989 Sentencing Reform Act.

The Defendant also argues that the trial court was biased against the Defendant and predisposed to sentence him harshly. In support of this argument, he points out the following colloquy which took place during a bench conference immediately prior to trial:

**Defense Counsel:** Your Honor, I had a long talk with [the Defendant], and I think he would be willing to plead to the indictment now. He wants you to sentence him, but he wants to be sentenced soon. He doesn't want to wait another month for sentencing.
**Court:** I don't give a darn what he wants.
**Defense Counsel:** Well, - -
**Court:** Does he want to enter a plea of guilty, or does he want to - - and I'm going to bust his rear end. I can tell you that right now.

The Defendant further points out that at the hearing on the motion for new trial, the trial court stated, "[t]he reason he got 75 percent, was ordered to serve 75 percent of the sentence is because I couldn't order him to serve a hundred percent."

In misdemeanor sentencing, a separate sentencing hearing is not mandatory, but the trial court is required to allow the parties a reasonable opportunity to be heard on the question of the length of the sentence and the manner in which it is to be served. Tenn. Code Ann. § 40-35-302(a). In this case, the trial court did so. Further, the sentence imposed must be specific and consistent with the purposes and principles of the Criminal Sentencing Reform Act of 1989. Id. § 40-35-302(b). A percentage of not greater than seventy-five percent of the sentence should be fixed for service, after which the Defendant becomes eligible for "work release, furlough, trusty status and related rehabilitative programs." Id. § 40-35-302(d).

The misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). However, in determining the percentage of the sentence to be served in actual confinement, the court must consider enhancement and mitigating factors as well as the purposes and principles of the Criminal Sentencing Reform Act of 1989, and the court should not impose such percentages arbitrarily. Tenn. Code Ann. § 40-35-302(d).

When a criminal defendant challenges the length, range, or manner of service of a sentence, the reviewing court must conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Id. § 40-35-401(d). The Tennessee Supreme Court has held that in misdemeanor sentencing a trial court is not required to place specific findings

on the record. State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). A trial court need only consider the principles of sentencing and the enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute. Id. In this case, the trial court considered the principles of sentencing and enhancement and mitigating factors. Therefore, our review in this case is de novo with a presumption of correctness.

After a careful review, we conclude that the sentences imposed by the trial court are supported by the facts in the record, as well as by the appropriate principles of sentencing. In this case, the trial court found as an enhancement factor that "the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range." Tenn. Code Ann. § 40-35-114(1). In applying this factor, the trial court considered the following: (a) the Defendant's prior criminal record, which consisted of five misdemeanors; (b) a charge of resisting arrest in the present case for which the Defendant was acquitted; (c) the Defendant's prior criminal behavior involving drug possession, resulting in an appearance before the trial court on drug-related charges; and (d) the Defendant's conduct in the presence of the trial court. The trial court found no mitigating factors.

The record indicates that the Defendant had been convicted of five prior misdemeanor convictions. The trial court considered the Defendant's prior misdemeanor convictions for violation of an order of protection, resisting arrest, unlawful possession of a weapon, criminal trespass, and disorderly conduct. The Defendant concedes that these convictions were properly considered in sentencing him.

The Defendant argues that the trial court erred in considering the Defendant's charge for resisting arrest in the present case because the jury acquitted him of the charge. The trial court found that the State, despite the jury's verdict in this case, proved by a preponderance of the evidence that the Defendant was guilty of resisting arrest based on his actions in Dot's Bar. Our supreme court has held that the Sentencing Reform Act "does not preclude consideration of facts proven by a preponderance of the evidence, even where the facts are the basis of a charge for which there has been an acquittal." State v. Winfield, 23 S.W.3d 279, 282 (Tenn. 2000). We conclude that the trial court in this case properly considered as criminal behavior the Defendant's behavior that was the basis for the resisting arrest charge. Officers Larson and Brooks both testified that they had to physically carry the Defendant out of the bar on the night he was arrested. Although the Defendant claimed that he did not resist arrest, he did agree that the officers carried him out of the building. We conclude that the Defendant's behavior resulted in him being carried outside and substantiates the charge of resisting arrest. Thus, the trial court properly considered the Defendant's behavior upon which the resisting arrest charge was based as prior criminal behavior for purposes of Tennessee Code Annotated § 40-35-114(1).

We also conclude that the trial court properly considered the Defendant's behavior that resulted in the prior felony drug charges against him. The trial court considered the fact that the Defendant had recently been in the same court on a felony drug-related case. According to the trial judge, although the case was dropped because of a procedural problem with a search warrant, "the

evidence in that case reflected [that the Defendant] did have the contraband, which is criminal behavior, which the court may consider." We agree.

Finally, the trial judge considered his own observations of the Defendant's behavior outside the courtroom, which the judge believed to be "disturbing the peace" and showing "a great deal of disrespect for this Court." The trial court observed (or heard) behavior by the Defendant that the trial court believed to be prior criminal behavior for purposes of Tennessee Code Annotated § 40-35-114(1). The record is not clear as to the specifics of the Defendant's behavior. At the sentencing hearing, the trial court stated:

> I have witnessed myself, the defendant engaged in behavior outside the courtroom, which would probably have led to disturbing the peace, if he had been charged with that, and has certainly showed a great deal of disrespect for this court.

At the hearing on the Defendant's motion for a new trial, the trial court stated:

> Mr. Johnson, when we were holding court out at the jail in the courtroom out there for awhile, I, personally, heard Mr. Moubray create very severe disturbances outside the courtroom. We had him in court on another matter, and he was just very fortunate that the - - wasn't it a situation, I think, with a defective warrant, or something of that nature - - a defective search?

The record is also not clear as to whether the Defendant's behavior described by the trial court during the new trial motion is the same behavior referred to by the trial court at the sentencing hearing.

The Tennessee Rules of Evidence prohibit testimony in a trial by a judge or chancellor presiding at the trial. Tenn. R. Evid. 605. " No objection need be made in order to preserve the point." Id. Further, the trial court's observations in this case of the Defendant's behavior on prior occasions are clearly not the type of adjudicative facts that would be the proper subject of judicial notice. See Tenn. R. Evid. 201(b). While it was perfectly proper at both the sentencing hearing and the hearing on the motion for new trial for the trial court to assess the attitude, demeanor and credibility of the Defendant as a witness, we have concluded that the trial court erred in considering the Defendant's "behavior outside the courtroom," as witnessed personally by the trial court.

However, even having concluded that the trial court improperly considered the "disturbing the peace" and "disrespectful" behavior by the Defendant, we do not conclude that any modification of the Defendant's sentence is warranted. The Defendant has five prior criminal convictions and two other instances of criminal behavior, and we agree with the trial court's conclusion that there are no mitigating factors. The sentence imposed by the trial court was justly deserved by this Defendant.

The Defendant also argues that the trial court should have considered the sentences imposed for two other people in the bar on the same evening who were charged with the same crime. During the sentencing hearing, the trial judge stated that he "couldn't care less what happened to the other defendants." However, the trial judge did allow evidence of the other convictions and sentences to

be entered into the record.[1] Although the sentences of the other individuals differed from that of the Defendant, there is no evidence in the record concerning the particular facts and circumstances that may have been relevant in the sentencing of these individuals. Therefore, the trial court had no reason to find, nor can we conclude, that the Defendant's sentence was disproportionate to the sentences received by the other individuals.

Accordingly, we AFFIRM the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE

---

[1] On the night that the Defendant was arrested, two other individuals were also charged and later convicted of possession of a weapon where alcoholic beverages are sold. One of the individuals was sentenced to eleven months and twenty-nine days, all suspended, and the other was sentenced to six months, with four of those months suspended.